IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAHDI AGHAMOHAMMADI, et al.             :

                                        :

    v.                                  :    Civil Action No. DKC 24-2801

                                        :

MARCO RUBIO, in his
official capacity as                    :
U.S. Secretary of State, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this visa processing case are several motions filed by Defendants. The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the reasons that follow, the motion for extension of time to respond to the complaint filed by Defendants Marco Rubio and Robert Jachim (collectively, "Defendants"),[1] (ECF No. 8), will be granted; Defendants' motion

---

[1] The complaint names Antony Blinken, in his official capacity as U.S. Secretary of State, and Robert Jachim, in his official capacity as Acting Director of Screening, Analysis and Coordination, as defendants. Marco Rubio became the U.S. Secretary of State on January 20, 2025. He is substituted as the proper defendant pursuant to Fed.R.Civ.P. 25(d), which states "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending," the "officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." It is not clear whether Robert Jachim still holds the position of Acting Director of the Office of Screening, Analysis and Coordination; he will thus remain the named defendant. *See* Fed.R.Civ.P. 25(d) ("[A]ny misnomer not affecting the parties' substantial rights must be disregarded.").

for extension of time to file a reply to the opposition filed by
Mahdi Aghamohammadi, Mokhtar Aghamohammadi, and Batool Panji
(collectively, "Plaintiffs"), (ECF No. 11), will be granted;
Defendants' motion to dismiss for lack of subject matter
jurisdiction, (ECF No. 9), will be granted; and Defendants' motion
to dismiss for failure to state a claim, (*Id.*), will be denied as
moot.

## I.   Background

### A.   Immediate-Relative Immigrant Visas

Congress has established a complex system, supplemented by
Department of State regulations, to govern the processing of visa
applications.  This case concerns a particular type of visa, the
immediate-relative immigrant visa.  The Supreme Court of the United
States explained the initial steps to seek this form of visa:

> Under the Immigration and Nationality Act
> (INA), 66 Stat. 163, as amended, 8 U.S.C. § 1101
> *et seq.*, an alien may not enter and permanently
> reside in the United States without a visa.  §
> 1181(a).   The INA creates a special visa-
> application process for aliens sponsored by
> "immediate relatives" in the United States.  §§
> 1151(b), 1153(a).   Under this process, the
> citizen-relative first files a petition on
> behalf of the alien living abroad [(called an I-
> 130 petition)], asking to have the alien
> classified as an immediate relative.  *See* §§
> 1153(f), 1154(a)(1).  If and when a petition is
> approved, the alien may apply for a visa by
> submitting the required documents and appearing

> at a United States Embassy or consulate for an interview with a consular officer. *See* §§ 1201(a)(1), 1202.

*Kerry v. Din*, 576 U.S. 86, 89 (2015).  Thereafter,

> Generally, the foreign national seeking a visa completes the application before the consular officer, then participates in the interview. *See* 22 C.F.R. §§ 42.61(a) & 42.62.
>
> "A consular office is required by law to act on visa applications." *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997).  To that end, "[w]hen a visa application has been properly completed and executed before a consular officer . . ., the consular officer *must* issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or . . . discontinue granting the visa."  22 C.F.R. § 42.81(a) (emphasis added).  The consular officer must refuse the visa if "it appears to the consular officer . . . that such alien is ineligible to receive a visa," or "the consular officer knows or has reason to believe that such alien is ineligible to receive a visa."  8 U.S.C. § 1201(g).  "If a visa is refused," the applicant has "one year from the date of refusal [to] adduce[] further evidence tending to overcome the ground of ineligibility on which the refusal was based," in which case the refusal "shall be reconsidered."  22 C.F.R. § 42.81(e).

*Ramizi v. Blinken*, 745 F.Supp.3d 244, 252 (E.D.N.C. 2024), *appeal dismissed,* No. 24-cv-2008, 2024 WL 5509498 (4th Cir. Dec. 9, 2024).

Refusals under INA § 221(g), 8 U.S.C. § 1201(g) ("221(g)"), are central to this case.  After a 221(g) refusal, the State Department frequently places the refused visa application in "administrative processing," a vague term that evidently refers to

consideration of additional submitted evidence and review of any security concerns the application prompted. During administrative processing, applicants may be directed to complete Form DS-5535 if their application prompted security concerns, after which the relevant office would produce a Security Advisory Opinion ("SAO") regarding the applicant's visa eligibility. (ECF No. 1 ¶ 31). The application "remain[s] refused" during the pendency of administrative processing. (*Id.* ¶ 70 (quoting ECF Nos. 1-7; 1-8)).

### B. Factual Background[2]

Plaintiffs are Mahdi Aghamohammadi, a United States Citizen, and his parents, Mokhtar Aghamohammadi and Batool Panji, who are Iranian nationals.

Plaintiff Mahdi[3] filed Petitions for Alien Relative, Form I-130, on behalf of his parents on December 4, 2019. (*Id.* ¶ 62). The Petitions were approved in late 2020, and the United States Citizenship & Immigration Services forwarded them to the National

---

[2] The following facts are set forward in the complaint and viewed in the light most favorable to the Plaintiffs.

[3] Because multiple plaintiffs share the same last name, the court will refer to each plaintiff by his or her first name to avoid confusion. Moreover, Plaintiffs refer to themselves by their first names in the complaint. (*See, e.g.*, ECF No. 1 ¶ 1 (referring to themselves as "Plaintiff Mokhtar" and "Plaintiff Batool")).

Visa Center for pre-processing. (*Id.* ¶ 63). Plaintiffs paid the appropriate fees and submitted supporting documentation. (*Id.* ¶ 65). On November 2, 2023, Plaintiffs Mokhtar and Batool were interviewed together by a consular officer at the U.S. Embassy in Yerevan, Armenia. (*Id.* ¶ 66). They allege that "[a]fter the interview, the Consular Official told Plaintiffs Mokhtar and Batool that their applications would each require further administrative processing. Plaintiffs Mokhtar and Batool together received a single 221(g) notice and were each requested to submit additional documents and complete a DS-5535 which would be sent by email." (*Id.* ¶ 67). The exhibit attached to the complaint contains the following: "Your visa application is refused under Section 221(g) of the U.S. Immigration and Nationality Act (INA). This refusal may be overcome when the requested documents are provided and/or administrative processing is complete." (ECF No. 1-5, at 2). They provided the additional information on November 7, 2023, (*Id.* ¶ 69), but no further action on their applications has been taken, (*Id.* ¶ 70). "Plaintiffs have sent inquiries to the State Department, as well as a Senatorial inquiry with the offices of U.S. Senator Chris Van Hollen." (*Id.* ¶ 71). Plaintiffs received a response to their Senatorial inquiry on May 17, 2024, from the Visas Chief at the U.S. Embassy in Armenia, restating

that the "applications are refused under section 221(g) of the INA for administrative processing." (*Id.*; ECF No. 1-10).  Plaintiffs are still waiting for further action.  (ECF No. 1 ¶ 70).

### C.  Procedural Background

Nearly eleven months after Plaintiffs Mokhtar and Batool attended their visa interviews and learned that their applications had been refused, Plaintiffs filed a petition for writ of mandamus and a complaint for declaratory and injunctive relief on September 30, 2024.[4]  (ECF No. 1).  In Count One, Plaintiffs allege that Defendants unlawfully withheld and unreasonably delayed adjudication of Plaintiffs Mokhtar's and Batool's visa applications under §§ 706(1)-(2) of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA").  In Count Two, Plaintiffs seek an order compelling Defendants to adjudicate Plaintiffs' visa applications under the Mandamus Act, 28 U.S.C § 1361.

Defendants' original deadline to respond to the complaint was December 6, 2024.  (ECF No. 5 ¶ 2).  The court granted Defendants' first motion for extension of time to respond to the complaint to January 6, 2025, noting the complications of the impending change

---

[4] As of the filing of this opinion, almost twenty-three months have passed since Plaintiffs Mokhtar and Batool attended their visa interviews.

of administration. (ECF No. 7). On January 6, 2025, Defendants filed a second motion for extension of time to respond to the complaint, seeking an extension to January 13, 2025. (ECF No. 8). On January 13, 2025, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. (ECF No. 9). Plaintiffs then filed their response in opposition to Defendants' motion to dismiss on January 27, 2025. (ECF No. 10). Defendants' reply was due on February 10, 2025. Local Rule 105.2(a). On February 10, 2025, Defendants filed a motion for extension of time to file their reply, seeking an extension to February 27, 2025. (ECF No. 11). Defendants filed their reply on February 27, 2025. (ECF No. 12).

## II. Motions for Extension of Time

Before reaching the motion to dismiss, the court must address Defendants' two pending motions for extension of time. The same standard applies to both of Defendants' pending motions for extension of time because they were filed "before the original time or its extension expire[d]." Fed.R.Civ.P. 6(b)(1)(a). In such circumstances, Defendants must show "good cause" for the extensions. *Id.*

Defendants are entitled to both extensions. First, Defendants requested the extension for time to respond to the

7

complaint because "undersigned counsel is awaiting additional information from the Department of State, including, but not limited to, a final declaration in support of the motion to dismiss." (ECF No. 8 ¶ 3). Plaintiffs did not consent to the extension, (*Id.* ¶ 4), but they also did not oppose it. This court has previously held that "awaiting information from the Department of State needed to file the motion to dismiss" satisfies the "good cause" standard. *Jahangiri v. Blinken*, No. 23-cv-2722-DKC, 2024 WL 1656269, at *3 (D.Md. Apr. 17, 2024). There is no reason to deviate from that conclusion here. Accordingly, Defendants' motion for extension of time to respond to the complaint is granted. Thus, Defendants' motion to dismiss, filed on January 13, 2025, is timely. (ECF No. 9).

Second, Defendants requested the extension for time to file their reply "[b]ecause of the schedule of undersigned counsel, including the competing demands of undersigned counsel's other cases and multiple concurrent filing deadlines." (ECF No. 11 ¶ 3). Plaintiffs did not consent to the extension, (*Id.* ¶ 4), but they also did not oppose it. This court sticks to its conclusion in *Jahangiri* that "competing demands from counsel's other cases" can satisfy the "good cause" standard, 2024 WL 1656269, at *3, and will accordingly grant Defendants' motion for extension of time to

file its reply to Plaintiffs' opposition.  Thus, Defendants' reply,
filed on February 27, 2025, is timely.  (ECF No. 12).

## III. Motion to Dismiss

Defendants moved to dismiss for lack of subject matter
jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state
a claim under Fed.R.Civ.P. 12(b)(6).  Defendants are correct that
the court lacks subject matter jurisdiction over both counts in
Plaintiffs' complaint.  Even if the court did possess jurisdiction,
Plaintiffs' complaint fails to state a claim upon which the court
can grant relief.

### A.    Standards of Review

"A motion to dismiss based on lack of subject matter
jurisdiction pursuant to [Fed.R.Civ.P.] 12(b)(1) raises the
question of whether the Court has the competence or authority to
hear the case." *Davis v. Thompson*, 367 F.Supp.2d 792, 799 (D.Md.
2005).  The plaintiff bears the burden of proving that subject
matter jurisdiction exists. *Demetres v. East West Constr., Inc.*,
776 F.3d 271, 272 (4th Cir. 2015).  When a defendant facially
challenges subject matter jurisdiction in a 12(b)(1) motion to
dismiss, as here, "the motion must be denied if the complaint
alleges sufficient facts to invoke subject matter
jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.

9

2009).  When considering a 12(b)(1) motion to dismiss, the court must afford the plaintiff "the same procedural protection" as under Fed.R.Civ.P. 12(b)(6).  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).  Accordingly, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff.  *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff."  *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)).  A plaintiff's complaint must only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting

10

Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 678).

In certain circumstances, the court may consider documents outside the pleadings when evaluating a motion to dismiss without converting the motion to one for summary judgment. A court is permitted to consider exhibits attached to the complaint. Fed.R.Civ.P. 10(c). Moreover, the court may consider outside evidence when determining whether subject matter jurisdiction exists. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Finally, "a document attached to a motion to dismiss [for failure to state a claim] may be considered when evaluating a motion to dismiss if the document was 'integral to the complaint and authentic.'" *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016) (quoting *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). "The same standard applies to documents attached to a plaintiff's response in opposition." *Fisher v. Md. Dep't of*

11

*Pub. Safety & Corr. Servs.*, No. 10-cv-206-JFM, 2010 WL 2732334, at *2 n.2 (D.Md. July 8, 2010) (citing *Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009)).   To dispose of Defendants' motion to dismiss for failure to state a claim, the court does not rely on any exhibits attached to the motion to dismiss or opposition, so it is unnecessary to determine whether they are integral and authentic.

> **B.   Subject Matter Jurisdiction**

> **1.   Count One**

To establish that the court possesses subject matter jurisdiction over their APA claim to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), Plaintiffs must allege that Defendants have failed to satisfy a discrete, nondiscretionary duty to act, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (interpreting § 706(1) to allow claims "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*"). Although not all courts across the country agree that this requirement goes to jurisdiction rather than the merits,[5] the

---

[5] *Sarshartehran v. Rubio*, No. 24-cv-633, 2025 WL 1261787, at *5 n.4 (W.D.Va. May 1, 2025) (collecting cases from across the country showing that some courts outside the Fourth Circuit instead

Fourth Circuit has indicated it is jurisdictional.  As one court

put it:

> The Fourth Circuit has framed *Norton*'s
> prohibition on judicial review of APA § 706(1)
> claims of agency action unlawfully withheld or
> unreasonably delayed absent discrete,
> required agency action as part of APA §
> 701(a)(2)'s preclusion of judicial review of
> "agency action . . . committed to agency
> discretion by law." *Lovo v. Miller*, 107 F.4th
> 199, 211 (4th Cir. 2024).  The Fourth Circuit
> treats the absence of discrete, required
> agency action as jurisdictional, not merely as
> an issue of the plaintiff failing to state a
> meritorious APA § 706(1) claim.

*Sarshartehran v. Rubio*, No. 24-cv-633, 2025 WL 1261787, at *5

(W.D.Va. May 1, 2025) (citing, among other Fourth Circuit cases,

*Gonzalez v. Cuccinelli*, 985 F.3d 357, 365–66 (4th Cir. 2021)).[6]

---

treat the "discrete, required agency action as a merits issue to
be addressed under Rule 12(b)(6)").

[6] Defendant, expressing some uncertainty about classifying
the discrete, nondiscretionary duty requirement as jurisdictional,
notes that the Fourth Circuit has also stated that "the APA does
not confer subject-matter jurisdiction on a court." (ECF No. 9-
1, at 9 (quoting *Genesis Healthcare, Inc. v. Becerra*, 39 F.4th
253, 262 (4th Cir. 2022)); *see also id.* at 9 n.2).  The *Genesis
Healthcare* court held that the "lack of a final agency action"
does not deprive the court of jurisdiction but rather deprives the
plaintiff of his APA cause of action. *Genesis Healthcare*, 39 F.4th
at 262.  While *Genesis Healthcare* might appear to conflict with
*Lovo* and *Gonzalez* at first glance, the decisions are in fact
consistent.  *Genesis Healthcare* did not involve the § 701(a)(2)
bar on judicial review at the heart of *Lovo* and *Gonzalez*.
Accordingly, the three decisions together stand for the same,

Walking through the APA's judicial review provisions helps explain the issue's jurisdictional nature. "A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof," 5 U.S.C. § 702, unless the "agency action is committed to agency discretion by law," *id.* § 701(a)(2). Agency action includes the agency's "failure to act." *Id.* § 701(b)(2); *id.* § 551(13). Thus, if the agency's failure to act is discretionary, judicial review is precluded and the court lacks jurisdiction to hear the case.

Here, Plaintiffs propose three discrete, nondiscretionary duties that they assert Defendants have failed to satisfy.[7] First, Plaintiffs point to 8 U.S.C. § 1202(b) and 22 C.F.R. § 42.81(a) to require a consular officer to adjudicate a properly made visa application by issuing, refusing, or discontinuing granting the visa. (ECF No. 1 ¶¶ 41, 90).[8] Second, Plaintiffs suggest that 22

_____

fundamental principle that the APA does not grant subject matter jurisdiction but can strip it.

[7] The court does not necessarily list Plaintiffs' arguments in the order they present them, but rather in the order in which the court will dispose of them.

[8] Plaintiffs also allege that Defendants' duty to adjudicate arises under § 1202(d), which provides that "[a]ll *nonimmigrant* visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d) (emphasis added). This provision is inapposite because Plaintiffs seek immigrant visas, not nonimmigrant visas. (ECF No. 1 ¶ 61). Section 1202(b) contains

C.F.R. § 42.81(e) requires a consular officer to reconsider a refused visa if the applicant supplies additional evidence. (*Id.* ¶ 53). Third, Plaintiffs argue that "Defendants have a nondiscretionary duty to conclude a matter presented to them within a reasonable time" under 5 U.S.C. § 555(b). (*Id.* ¶ 92). At all times, Plaintiffs maintain that Defendants' 221(g) refusal of Plaintiffs' visa applications and subsequent placement of those applications in administrative processing does not satisfy the duties outlined above. (*E.g.*, *id.* ¶ 80; ECF No. 10, at 22).

Although there is no shortage of supporting case law on both sides, the weight of the case law in the Fourth Circuit clearly favors Defendants, and the court finds it persuasive. Of the at least two dozen cases in the Fourth Circuit addressing whether a 221(g) refusal satisfies the consular officer's duty, the court has identified only three cases that may suggest it does not. *Yarmohammadi v. Rubio*, No. 24-cv-2952-BAH, 2025 WL 2043719, at *7 (D.Md. July 21, 2025); *Parva v. Blinken*, No. 23-cv-3287-TDC, 2024 WL 4042466, at *3–4 (D.Md. Sep. 4, 2024); *Jahangiri*, 2024 WL 1656269, at *4–6. These cases, though well-reasoned, do not

---

the same language as § 1202(d) and pertains to immigrant visas. Although it makes little practical difference, the court will disregard references to § 1202(d).

persuade the court for the reasons stated below.[9]  Only the duty under § 1202(b) and § 42.81(a) is in fact discrete and nondiscretionary, and Defendants have already satisfied it. Consequently, the court lacks jurisdiction over Plaintiffs' APA and mandamus claims.

First, Plaintiffs allege that 8 U.S.C. § 1202(b), read together with its implementing regulation 22 C.F.R. § 42.81(a), requires further action by Defendants beyond the 221(g) refusal. (ECF No. 1 ¶¶ 41, 90).  Section 1202(b) states that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer."  Section 42.81(a) provides that "[w]hen a visa application has been properly completed and executed before a consular officer . . ., the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law[,] or[] . . . discontinue granting the visa."  Plaintiffs do not contest that Defendants refused their visa applications, but

---

[9] This court issued the opinion in *Jahangiri*.  It considered 221(g) refusals only in the context of the defendants' mootness and consular nonreviewability arguments.  Whether a 221(g) refusal is final for the purposes of mootness and consular nonreviewability is a different question from the one presented here.  The finality of 221(g) refusals is dispositive on questions of mootness and consular nonreviewability, but irrelevant to whether the APA precludes judicial review because there is no statutory or regulatory command that the refusal be final.  *See infra* section III.B.1.  Therefore, *Jahangiri* can be reconciled with this opinion.

they contend that this refusal was not final, (ECF No. 10, at 24), because Defendants placed their applications in administrative processing and indicated Plaintiffs "will receive another adjudication once such processing is complete," (ECF No. 1 ¶ 70 (quoting ECF Nos. 1-7; 1-8)).  Accordingly, Plaintiffs assert that Defendants have not satisfied their duty to issue, refuse, or discontinue granting their visa applications under § 42.81(a), and thereby to adjudicate their visa applications under § 1202(b), because the refusal and adjudication are not final.

Defendants concede that § 42.81(a) does impose a discrete, nondiscretionary duty on them, but respond that their duty under § 42.81(a) "is satisfied when the officer refuses a visa application under INA § 221(g) . . . at the conclusion of the interview." (ECF No. 9-1, at 10–11).  In other words, they argue, "consular officers have no duty under the INA or its regulations to take further action on, or re-adjudicate, a refused visa application." (*Id.* at 11).  Here, Defendants say they complied with § 42.81(a) "when they refused Plaintiffs' visa applications under § 221(g) at the conclusion of the visa interviews," and thus

17

"there is no further nondiscretionary action for [them] to take." (*Id.* at 13 (citation modified)).[10]

Defendants' argument prevails. Plaintiffs attempt to smuggle a requirement of finality into § 42.81(a) but cannot escape the reality that § 42.81(a) lacks any such requirement. *Sarshartehran*, 2025 WL 1261787, at *7 ("[T]here is no mandatory duty under the INA or its implementing regulations requiring consular officers to reach a more definitive decision on a visa application that has already been refused."); *Yaghoubnezhad v. Stufft*, 734 F.Supp.3d 87, 101 (D.D.C. 2024) ("Conspicuously absent from [an identical]

_____

[10] Defendants do not respond to Plaintiffs' argument that § 1202(b) imposes a duty on Defendants to adjudicate their applications. Courts have expressed doubt that § 1202(b) imposes any duty at all. *Sakhi v. Blinken*, No. 24-cv-1376-DLB, 2025 WL 904141, at *4 (D.Md. Mar. 25, 2025) ("'Courts are split on whether there is a mandatory duty,' under the INA, 'to review and adjudicate' immigrant and nonimmigrant visa applications." (citation modified)). That split stems from a dispute over which portion of the relevant language in § 1202(b) courts should emphasize. Courts can read the provision to emphasize the action—"[a]ll immigrant visa applications *shall be reviewed and adjudicated* by a consular officer"—or the actor—"[a]ll immigrant visa applications shall be reviewed and adjudicated *by a consular officer*." 8 U.S.C. § 1202(b) (emphases added). Even if the provision is read to emphasize the action, "adjudicate" does not appear to be defined under the INA. *See id.* § 1101. Therefore, it is quite difficult to conclude that there is any daylight between a possible requirement of adjudication in § 1202(b) and the requirement of issuance or refusal in § 42.81(a). As such, the court proceeds on the basis that any duty under § 1202(b) is captured in § 42.81(a), which plainly imposes a duty that Defendants concede.

provision is any requirement that the refusal be 'final' or ineligible for discretionary re-adjudication or 'administrative processing.'").  It may well be that the 221(g) refusal is not a final refusal.  Plaintiffs attest that "[m]any other visa applicants who attended interviews," presumably received 221(g) refusals, "and went into administrative processing have since received final decisions on their applications."  (ECF No. 1 ¶ 101).  But § 42.81(a) mandates nothing after the consular officer initially refuses a visa under 221(g).  "[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."  *Ramizi*, 745 F.Supp.3d at 261.

The courts that have found that a 221(g) refusal does not satisfy the § 42.81(a) duty tend to rely on the lack of finality in a 221(g) refusal.  *E.g.*, *Parva*, 2024 WL 4042466, at *3 ("[A] refusal of a visa under [221(g)] [i]s not actually final where the State Department specifically noted that the case was placed in 'administrative processing' or requested additional information." (citation modified)); *Awal v. U.S. Dep't of State*, No. 24-cv-382, 2024 WL 4979661, at *8 (D. Minn. Dec. 4, 2024) ("Defendant does not point to a regulation stating that such a [221(g)] 'refusal' constitutes the final agency action.").

19

These courts overlook, however, that § 42.81(a) specifically provides for refusal under 221(g), and the remainder of § 42.81 clearly accounts for a subsequent review process within which administrative processing fits comfortably, even if not explicitly mentioned.  Nothing in § 42.81(a) indicates that a refusal is only a refusal once the subsequent review process, whatever form it may take, is completed. Quite the contrary.  Review can occur only if there is first a refusal under § 42.81(a).  Moreover, the Department of State knew how to use the word "final" in § 42.81, and in fact placed it in contradistinction with "refusal."  22 C.F.R. § 42.81(c) ("If the principal consular officer or alternate does not concur in the *refusal*, that officer shall . . . assume responsibility for *final* action on the case." (emphases added)); *cf. Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation modified)).

Plaintiffs also rely on language in the Department of State's Foreign Affairs Manual ("FAM"), but such arguments are likewise unavailing.  Importantly, "the FAM is an 'agency manual[] . . . which lack[s] the force of law.'"  *Ramizi*, 745 F.Supp.3d at 263

20

(quoting *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)).
Any language in the FAM, then, is necessarily subordinate to the
statutes and regulations interpreted above.  First, Plaintiffs
misread the FAM in arguing that 221(g) refusals are mere quasi-
refusals.  (ECF No. 1 ¶ 51 (quoting 9 FAM § 504.11-3(B))).
Defendants correctly note that quasi-refusals apply only to
informal visa applications, (ECF No. 12, at 4), and Plaintiffs
here filed formal visa applications, (*See* ECF No. 1 ¶¶ 60-66).
Second, Plaintiffs make much of a change in the FAM between the
time of their interview and the filing of this litigation.  At the
time of their interview, the FAM indicated that a consular officer
should refuse an application under 221(g) when "a final
determination is deferred for additional evidence" or "further
clearance." (*Id.* ¶ 54 (quoting previous version of 9 FAM § 504.11-
3(B)(2)(a); ECF No. 10-5, at 1-2).  This provision of the FAM now
prescribes this procedure only for applications requiring an
advisory opinion.  (ECF No. 1 ¶ 54 (citing current version of 9
FAM § 504.11-3(B)(2)(a); ECF No. 10-5, at 3).  Whether the refusal
is a "final determination," however, is beside the point because
finality is not dispositive here.

The language the Department of State uses in its
communications with Plaintiffs, and even in the FAM, is admittedly

21

vague and contradictory. For example, the U.S. Embassy indicated to Plaintiffs that administrative processing is "legally mandated," and visa applications "are adjudicated as soon as administrative processing . . . ha[s] been completed." (ECF No. 1-10, at 2). But Plaintiffs' online case status communicates that "a U.S. consular officer has adjudicated and refused [their] visa application[s]," and they "will receive *another* adjudication once [administrative] processing is complete." (ECF Nos. 1-7; 1-8 (emphasis added)). In one provision of the FAM, overcoming a refusal is alternately called a "re-adjudicat[ion]" and an "adjudicat[ion]." 9 FAM § 504.11-4(A). Although Defendants' communications and internal guidance are not a model of clarity (much to the detriment of Plaintiffs and others similarly situated), Defendants' lack of clarity cannot change what is legally required of them under the relevant statutes and regulations: a simple refusal.

Second, Plaintiffs point to 22 C.F.R. § 42.81(e) to mandate further action on their visa applications. (ECF No. 1 ¶ 53). Section 42.81(e) states that "[i]f a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." Plaintiffs

22

allege that they submitted additional documentation within days of the 221(g) refusal of their visa applications, (*See id.* ¶¶ 67–69), triggering a duty to reconsider. Defendants do not address Plaintiffs' § 42.81(e) argument in their motion to dismiss, which ordinarily would mean their opposition to the § 42.81(e) argument is waived. That being said, whether Defendants have such a duty under § 42.81(e) goes to the court's subject matter jurisdiction, so the court may still consider whether § 42.81(e) imposes a duty. *Wells v. Johnson*, --- F.4th ---, No. 24-cv-1829, 2025 WL 2315981, at *2 (4ᵗʰ Cir. Aug. 12, 2025) (published) ("[F]ederal courts must confirm for themselves that they have jurisdiction.").

Plaintiffs cannot establish that § 42.81(e) imposes any discrete, nondiscretionary duty on Defendants. Perplexingly, Plaintiffs do not cite *Parva v. Blinken*—a case decided in this district before Plaintiffs filed suit—in any of their filings. *Parva* is the one case in the Fourth Circuit to have found that § 42.81(e) imposes a specific, nondiscretionary duty. 2024 WL 4042466, at *4. In *Parva*, the court emphasized the mandatory language of "shall" in the regulation and held the following:

> Where the plain language of the relevant
> regulation requires reconsideration when such
> additional information is submitted, and it is
> fair to infer at this early stage that the
> information submitted provided further

23

> evidence to overcome the ground of
> ineligibility, Plaintiffs have identified a
> non-discretionary action that the State
> Department has failed to take.

*Id.* *Parva* is unpersuasive, however, for two reasons. First, it assumes away the inherently discretionary predicate in § 42.81(e) that the additional evidence "tend[s] to overcome the ground of ineligibility on which the refusal was based." *See Ramizi*, 745 F.Supp.3d at 264 ("[A] consular officer's duty to reconsider a refused application under Section 42.81(e) is discretionary, and based on that officer's independent determination that the applicant has adduced additional evidence that tends to overcome the ground(s) of ineligibility on which the refusal was based." (citing 5 U.S.C. § 701(a)(2))). Second, even if the additional evidence did trigger reconsideration of the refused applications, "[a] process of reconsideration does not clearly contemplate a subsequent formal decision." *Id.* at 264 n.5; *see also Berenjian v. Blinken*, No. 24-cv-663, 2024 WL 3732451, at *3 (E.D.Va. Aug. 8, 2024). Consequently, any action that § 42.81(e) compels is not sufficiently discrete to support jurisdiction.

Finally, Plaintiffs argue that § 555(b) of the APA requires further action by Defendants, but Defendants correctly note that that this provision is too "amorphous and open-ended" to support

relief, (ECF No. 9-1, at 10).  Section 555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  5 U.S.C. § 555(b).  As Judge Boardman recently explained:

> [T]his general directive is no "specific, unequivocal command" from Congress to "take a *discrete* agency action." *See Norton*, 542 U.S. at 63-64.  Instead, § 555(b) "merely restates a principle of good administration." Attorney General's Manual on the Administrative Procedure Act 65 (1947); *see also Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F.Supp.2d 1, 9 (D.D.C. 2008) ("[T]he general directive of Section 555(b) is a far cry from the 'discrete agency action' that courts require when issuing an order compelling agency action 'unlawfully withheld or unreasonably delayed'" (quoting *Norton*, 542 U.S. at 63)).

*Sakhi v. Blinken*, No. 24-cv-1376-DLB, 2025 WL 904141, at *5 (D.Md. Mar. 25, 2025); *see also, e.g.*, *Yaghoubnezhad*, 734 F.Supp.3d at 102 ("While [§ 555(b)] implies that the agency, at some point, must reach a final decision, it 'does not speak specifically to the duties of consular officers, and it uses the open-ended phrase within a reasonable time.'" (quoting *Pourabdollah v. Blinken*, No. 23-cv-1603, 2024 WL 474523, at *6 n.5 (D.D.C. Feb. 7, 2024))).  The court agrees that § 555(b) does not impose any specific, nondiscretionary duty on Defendants.  Even if § 555(b) did impose

25

a duty to "conclude" adjudication of a visa application, Defendants satisfied that duty through the 221(g) refusal.

### 2. Count Two

Plaintiffs contend in Count Two that the Mandamus Act, 28 U.S.C. § 1361, also supplies jurisdiction for this court "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to a plaintiff." (ECF No. 1 ¶¶ 9-11 (quoting 28 U.S.C. § 1361); *id.* ¶ 105). A court can grant mandamus relief only if the plaintiff establishes "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016) (citing *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011)). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *Id.* (citing *In re Medicare Reimbursement Litigation*, 414 F.3d 7, 10 (D.C. Cir. 2005)).

Plaintiffs cannot satisfy the second and third requirements, therefore the court lacks jurisdiction over Plaintiffs' mandamus claim. The second requirement that the government official be "violating a clear duty to act" duplicates the requirement under § 706(1) of the APA that the defendant has failed to satisfy a

26

discrete, nondiscretionary duty to act. *Jahangiri*, 2024 WL 1656269, at *14 ("[T]he standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act."). As discussed above, Plaintiffs have identified no such duty that Defendants have failed to satisfy. The third requirement "that no adequate alternative remedy exists" is not satisfied if the plaintiff's "claim[] for mandamus relief . . . would be duplicative of their cause of action under the APA." *Id.* (citing *Jaraba v. Blinken*, 568 F.Supp.3d 720, 731 (W.D.Tex. 2021)). Plaintiffs' mandamus claim here precisely duplicates their APA cause of action. Because Plaintiffs cannot meet the jurisdictional requirements of a mandamus claim, Count Two must be dismissed for lack of jurisdiction.

### C. Failure to State a Claim

Even if the court did possess jurisdiction over Plaintiffs' claims, Plaintiffs fail to state a claim under Fed.R.Civ.P. 12(b)(6) for unreasonable delay or unlawful withholding of agency action.

#### 1. Consular Nonreviewability

Defendants also moved to dismiss the case as nonjusticiable under the doctrine of consular nonreviewability, (ECF No. 9-1, at 14), which the court will analyze under Fed.R.Civ.P 12(b)(6). As

numerous courts have concluded, the doctrine of consular nonreviewability is properly analyzed as a merits issue, rather than a jurisdictional one. The Eleventh Circuit explained:

> [Consular nonreviewability] is not the consequence of legislation that divests federal courts of jurisdiction. *Cf. Trump v. Hawaii*, 138 S.Ct. 2392, 2407 (2018) ("The Government does not argue that the doctrine of consular nonreviewability goes to the Court's jurisdiction, . . . nor does it point to any provision of the INA that expressly strips the Court of jurisdiction over plaintiffs' claims."). As such, "our deference goes to our *willingness*, not our *power*," to review a consular official's decision on a visa application. *See Allen v. Milas*, 896 F.3d 1094, 1101 (9th Cir. 2018). In other words, the doctrine goes to the merits of a claim. *See Matushkina v. Nielsen*, 877 F.3d 289, 294 n.2 (7th Cir. 2017) ("We treat the doctrine of consular nonreviewability as a matter of a case's merits rather than the federal courts' subject matter jurisdiction."); *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021) ("Dismissal based on consular nonreviewability . . . is a merits disposition.").

*Del Valle v. Sec'y of State*, 16 F.4th 832, 838 (11th Cir. 2021). Courts in this circuit have noted this distinction. *See, e.g., Ameen v. U.S. Dep't of State*, No. 23-cv-1397, 2024 WL 3416264, at *2 n.5 (E.D.Va. July 15, 2024) ("[T]he Court considers [consular nonreviewability] in the context of Rule 12(b)(6)."); *Sesay v. United States*, No. 18-cv-1397-DKC, 2019 WL 670244, at *2 (D.Md.

28

Feb. 19, 2019) (citing *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 123 (2ᵈ Cir. 2009)) (explaining the "subtle difference" between "normal subject matter jurisdiction" and the doctrine of consular nonreviewability), *aff'd*, 984 F.3d 312 (4ᵗʰ Cir. 2021). The Supreme Court recently confirmed that "the doctrine of consular nonreviewability is not jurisdictional." *Dep't of State v. Muñoz*, 144 S.Ct. 1812, 1820 n.4 (2024).

Defendants' reliance on the doctrine of consular nonreviewability is misplaced because the doctrine does not apply to this case. Consular nonreviewability "instructs that ordinarily, 'it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.'" *Sesay*, 984 F.3d at 315 (quoting *United States* ex rel. *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). "A majority of courts, however, have held that the doctrine of consular nonreviewability does not bar claims to compel adjudication of a visa petition undergoing administrative processing." *Jahangiri*, 2024 WL 1656269, at *6 (collecting cases). The reason is straightforward: "Consular nonreviewability 'does not bar suits that merely seek to compel *some* agency action—regardless of the substance of that action.'" *Ramizi*, 745 F.Supp.3d at 258 (quoting *Al-Gharawy v.*

29

*U.S. Dep't of Homeland Sec.*, 617 F.Supp.3d 1, 12 (D.D.C. 2022)). Here, Plaintiffs seek only to compel the conclusion of administrative processing, regardless of whether that results in issuance or denial of their visa applications. Consequently, consular nonreviewability poses no obstacle to Plaintiffs' suit.

### 2.   Unreasonable Delay

### Count One

Plaintiffs allege that Defendants unreasonably delayed adjudication of their visa applications under 5 U.S.C. § 706(1). (ECF No. 1 ¶¶ 87–88). Defendants moved to dismiss this claim because "there is no statutory deadline under federal law by which a consular office must adjudicate or reconsider a visa application that would potentially give rise to an APA violation," and a delay of fourteen months (at the time of the motion, now nearly twenty-three months) is not unreasonable. (ECF No. 9-1, at 18–19). Plaintiffs respond that "[u]nreasonable delay claims require fact-based inquiries not suitable for disposition at this stage of litigation." (ECF No. 10, at 36).

To determine whether Plaintiffs have stated a claim that Defendants unreasonably delayed adjudication of Plaintiffs' visa applications, the court uses the widely adopted six-factor test

established by the D.C. Circuit in *Telecomms. Rsch. & Action Ctr. v. FCC* ("*TRAC*"):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

750 F.2d 70, 80 (D.C. Cir. 1984) (citation modified); *see also, e.g., Jahangiri*, 2024 WL 1656269, at *7 (following the *TRAC* test).

Contrary to Plaintiffs' contentions regarding the impropriety of applying the *TRAC* test on a motion to dismiss, many courts have chosen to analyze the *TRAC* factors at the motion to dismiss stage. *See, e.g., Janay v. Blinken*, 743 F.Supp.3d 96, 113–18 (D.D.C. 2024)

31

(explaining that "consideration of [the *TRAC*] factors is not premature" provided that "the complaint and other materials properly considered at the motion-to-dismiss stage allege enough facts to evaluate the *TRAC* factors"); *Lin v. Mayorkas*, No. 24-cv-1403, 2025 WL 1884304, at *3–5 (E.D.N.Y. July 7, 2025) (applying the *TRAC* factors at the motion to dismiss stage); *Hassan v. Bitter*, 748 F.Supp.3d 722, 748–54 (D.Neb. 2024) (same); *Ishaq v. Schofer*, No. 24-cv-207-TJS, 2024 WL 3729107, at *5–7 (D.Md. Aug. 8, 2024) (same); *Mueller v. Blinken*, 682 F.Supp.3d 528, 537–40 (E.D.Va. 2023) (same); *Throw v. Mayorkas*, No. 22-cv-5699, 2023 WL 2787222, at *3–5 (W.D.Wash. Apr. 5, 2023) (same).

The allegations concerning the first two *TRAC* factors would favor Defendants.  As this court explained in *Jahangiri*:

> The first two *TRAC* factors focus on "'whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale.'" *Dennis*[ *v. Blinken*, No. 22-cv-2522-JRR], 2023 WL 4764576, at *5 [(D.Md. July 26, 2023)] (quoting *Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F.Supp.3d 295, 300 (D.D.C. 2014)); *see also Begum*[ *v. U.S. Dep't of State*, No. 22-cv-478-JMC], 2022 WL 16575703, at *7 [(D.Md. Oct. 31, 2022)] (explaining that the first two factors "focus on the reasonableness of the delay and whether Congress has set a timeline for the completion of the action in question").  Courts generally consider the first and second *TRAC* factors together.  *Dennis*, 2023 WL 4764576, at *5

32

> (quoting *Arab v. Blinken*, 600 F.Supp.3d 59, 69
> (D.D.C. 2022)); *Begum*, 2022 WL 16575703, at *7
> (quoting *Arab*, 600 F.Supp.3d at 69).
>
> "Whether the State Department has a 'rule
> of reason' 'cannot be decided in the abstract,
> by reference to some number of months or years
> beyond which agency inaction is presumed to be
> unlawful, but will depend in large part . . .
> upon the complexity of the task at hand, the
> significance (and permanence) of the outcome,
> and the resources available to the agency.'"
> *Milligan v. Pompeo*, 502 F.Supp.3d 302, 317–18
> (D.D.C. 2020) (quoting *Mashpee Wampanoag
> Tribal Council, Inc. v. Norton*, 336 F.3d 1094,
> 1102 (D.C. Cir. 2003)).

2024 WL 1656269, at *8.

Plaintiffs mistakenly assert that the District of Columbia Appropriations Act establishes a clear timeline to guide courts under the first two *TRAC* factors. (ECF No. 1 ¶ 95).[11]  That Act

---

[11] In their opposition to Defendants' motion to dismiss, Plaintiffs also point to several non-statutory sources to supply a timeline, namely the FAM and 22 C.F.R. § 41.121. (ECF No. 10, at 34).  The *TRAC* test clearly instructs courts to look to what *Congress* has said, not the agency itself.  Even if the court considered agency internal guidance and regulations, the FAM and § 41.121 provide no clear timeline.  First, the FAM merely duplicates the language of the District of Columbia Appropriations Act and indicates that consular officers should "strive to meet the 30[]-day requirement[]."  9 FAM § 504.7(2).  That language is "aspirational, not mandatory."  *Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024).  Second, § 41.121(c) states that "a review of the refusal may be deferred for not more than 120 days," but it applies only to nonimmigrant visas, not the immigrant visas at issue here.  Section 42.81 is the analogous regulation for immigrant visas and lacks the 120-day provision. It does indicate that a case "shall be reconsidered" if "evidence

provides that "[i]t shall be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States citizens . . . within 30 days of receipt of all necessary documents."   Pub. L. No. 106-113, § 237(a), 113 Stat. 1501, 1501A-430 (1999).   Plaintiffs omit the language "it shall be the policy" and substitute their interpretation that this thirty-day timeline is "required."   (ECF No. 1 ¶ 95).   As this court has previously stated, however, this provision reflects a mere "policy preference" and does not impose any mandatory deadline.   *Jahangiri*, 2024 WL 1656269, at *10 (collecting cases).     Accordingly, Defendants correctly point out that "[t]here is no congressionally imposed timeline for processing [relative] visa applications." (ECF No. 9-1, at 20 (alterations in original) (quoting *Brzezinski v. U.S. Dep't of Homeland Sec.*, No. 21-cv-376, 2021 WL 4191958, at *5 (D.D.C. Sep. 15, 2021)).

"In the absence of a congressionally supplied timeframe, courts typically look to case law for guidance," *Brzezinski*, 2021 WL 4191958, at *5 (citation modified), but Plaintiffs fail to direct the court to any case law supporting the conclusion that

---

tending to overcome . . . the refusal" is produced within one year, 22 C.F.R. § 42.81(e), but that says nothing about the timeline of the refusal or the reconsideration, only the time between the two.

their now twenty-three month delay is unreasonable.[12]  The one case finding an unreasonable delay that Plaintiffs cite, *Alibeik v. Chertoff*, involved a delay of "two and one-half years" where the government had not yet interviewed or refused the applicant due, at least in part, to a stalled FBI background check.  *See* No. 07-cv-1938, 2007 WL 4105527, at *1-2, *7 (N.D.Cal. Nov. 16, 2007); (ECF No. 10, at 33).  That delay is substantially longer than the one Plaintiffs have experienced thus far, and this court has previously found delays due to stalled FBI background checks to be distinguishable.  *See Jahangiri*, 2024 WL 1656269, at *9.  In fact, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Arab*, 600 F.Supp.3d at 70 (alteration in original) (quoting *Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).  Courts have found administrative processing delays similar in length to the delay here not to be unreasonable.  *See, e.g., Jahangiri*, 2024 WL 1656269, at *9 (holding that a seventeen-

---

[12] There is some disagreement among the courts about how to measure the delay, but many "seem to focus on the delay from the last Government action to the issuance of the opinion."  *Begum*, 2022 WL 16575703, at *7 (quoting *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)).  The court follows that approach here.

month administrative processing delay is not unreasonable); *Fakhimi v. Dep't of State*, No. 23-cv-1127, 2023 WL 6976073, at *8 (D.D.C. Oct. 23, 2023) (holding that an eighteen-month administrative processing delay is not unreasonable); *Bagherian v. Pompeo*, 442 F.Supp.3d 87, 95 (D.D.C. 2020) (holding that a delay of at least twenty-five months in administrative processing is not unreasonable).

In short, as alleged in the complaint, these two factors would heavily favor Defendants.

The allegations concerning the third and fifth *TRAC* factors would favor Plaintiffs. These two factors assess whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Like factors one and two, factors three and five are typically considered together. *Jahangiri*, 2024 WL 1656269, at *11 (quoting *Ramirez v. Blinken*, 594 F.Supp.3d 76, 94 (D.D.C. 2022)). Plaintiffs have adequately alleged that their health and welfare are at stake, representing significant interests prejudiced by delay. More specifically, Plaintiffs allege that "the prolonged and indefinite duration of family separation and an inability to return home puts undue strain on [their] relationship and health." (ECF No. 1 ¶ 96). They further allege that the delay has caused

36

them to "miss[] memories, milestones, and the simple shared joys of daily family life," (ECF No. 10, at 12), resulting in "severe emotional distress and psychological harm," (ECF No. 1 ¶ 76).

Defendants' retort that these consequences are not necessarily unusual among visa applicants misses the mark. The *TRAC* test applies to all agency action unreasonably delayed, and visa adjudications, a subset of all agency action, have an unusually strong effect on human health and welfare. It is therefore not surprising that many visa applicants, particularly immediate-relative visa applicants, can satisfy factors three and five. Thus, the allegations concerning factors three and five would favor Plaintiffs. *See Jahangiri*, 2024 WL 1656269, at *11 (collecting cases reaching the same conclusion on similar, if not identical, language).

The allegations concerning the fourth *TRAC* factor would favor Defendants. Courts often determine this factor "carries the greatest weight." *Milligan*, 502 F.Supp.3d at 319. It instructs the court to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. If "a judicial order putting [the petitioner] at the head of the queue [would] simply move[] all others back one space," courts will not grant relief. *Jahangiri*, 2024 WL 1656269, at *12

(alterations in original) (quoting *Milligan*, 502 F.Supp.3d at 319). Plaintiffs' request would do just that.

Plaintiffs seek an order compelling Defendants to conclude adjudication of their immediate-relative immigrant visa applications, but such relief would allow Plaintiffs to skip to the front of the line. As this court explained in *Jahangiri*, "visa processing capacity [is] a 'zero-sum game' and therefore . . . the fourth *TRAC* factor [weighs] in favor of the government because 'granting [p]laintiff[s'] request to expedite would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own.'" *Id.* (third and fourth alterations in original) (quoting *Murway v. Blinken*, No. 21-cv-1618, 2022 WL 493082, at *4 (D.D.C. Feb. 16, 2022)) (collecting cases). Had Plaintiffs alleged that they were "singled . . . out for mistreatment," then "judicial relief would . . . advance the cause of equal treatment." *In Re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991). Plaintiffs, however, make no such allegation.

Plaintiffs contend that this factor favors them because their case requires a SAO, which would not be adjudicated on a "first-in first-out" basis, and therefore they would not be skipping to the front of any line. (ECF Nos. 1 ¶ 31; 10, at 15, 35). Even assuming that an SAO was indicated in this case based on

38

Defendants' request that Plaintiffs complete Form DS-5535, (*See* ECF Nos. 1 ¶¶ 31, 67; 1-2 ¶ 18), Plaintiffs' reliance on this fact is overstated.  First, the reason that SAOs are not processed on a first-in, first-out basis is because of the "complexity" of the interagency process they entail.  (ECF No. 1-2 ¶ 27 ("Because of the complexity of this process, SAO requests can be neither addressed nor resolved on a first-in first-out basis."); *id.* ¶ 26 ("In cases where the Department analyst and officials at clearing partner agencies view the derogatory information differently, the matter may need to be elevated to the leadership of the respective agencies for resolution.")).  Because such security reviews implicate sensitive foreign policy and national security concerns, "the agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *Jahangiri*, 2024 WL 1656269, at *12 (quoting *Begum*, 2022 WL 16575703, at *8) (finding that the fourth factor favored the defendants even when the plaintiff had filled out a DS-5535).  Second, an SAO results only in "a *recommendation* to the consular officer" in charge of the visa application, (ECF No. 1-2 ¶ 26 (emphasis added)); therefore, even if requiring the conclusion of the SAO process does not force a reordering of agency priorities, that does not change the fact

39

that mandating a definitive conclusion to Plaintiffs' visa applications would impose such a reordering.[13]

The final *TRAC* factor is neutral here, as Defendants correctly observe. (ECF No. 9-1, at 22). It instructs that courts "need not find any impropriety . . . to hold that agency action is unreasonably delayed." *Jahangiri*, 2024 WL 1656269, at *9 (quoting *Dennis*, 2023 WL 4764576, at *9). Confusingly, Plaintiffs allege in the complaint that Defendants acted with impropriety through their "continued and blatant disregard for the indefinite suffering of separated families" and their "attempts to covertly redefine a 221(g) non-final decision as a final decision by revising the language on their website," (ECF No. 1 ¶ 100), before clarifying in their opposition brief that they "do not allege bad faith," (ECF No. 10, at 35-36). Plaintiffs' allegations of impropriety in the complaint are unsupported by facts tending to show improper motive and evidently not intended to suggest bad faith. "[W]here a plaintiff makes no allegation of bad faith, courts often have either chosen not to apply the sixth *TRAC* factor

---

[13] Plaintiffs rely on *Iqbal v. Blinken*, No. 23-cv-1299, 2024 WL 3904959 (E.D.Cal. Aug. 22, 2024), for the proposition that the fourth factor favors them when an SAO is at issue. (ECF No. 10, at 35 (quoting *Iqbal*, 2024 WL 3904959, at *12)). While *Iqbal* does support that proposition, the court is not persuaded for the reasons above.

at all, or acknowledged that this does not count against the plaintiff's case." *Brzezinski*, 2021 WL 4191958, at *6 (citation modified).  This factor thus comes out neutral.

*    *    *

In short, based on the allegations in the complaint, factors one, two, and four would favor Defendants, factors three and five would favor Plaintiffs, and factor six would be neutral.  Because the factors favoring Defendants are particularly weighty, Plaintiffs have failed to state a claim for unreasonable delay under the APA.

**Count Two**

Plaintiffs make a similar assertion as part of their mandamus claim in Count Two.  Because the "standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act," *Jahangiri*, 2024 WL 1656269, at *14 (quoting *Bagherian*, 442 F.Supp.3d at 96), Plaintiffs have failed to state a claim for mandamus.

**3.    Unlawful Withholding**

In addition to their unreasonable delay claim in Count One, Plaintiffs allege that Defendants have unlawfully withheld final adjudication of their visa applications in violation of § 706(1) and § 706(2) of the APA.  (ECF No. 1 ¶¶ 85, 87–88).  Section 706(1)

41

provides a cause of action to "compel agency action unlawfully withheld," and § 706(2) provides a cause of action to "set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

As this court has previously explained in an analogous circumstance, these claims fail. First, Plaintiffs do not distinguish in any way their § 706(1) unlawful withholding claim from their § 706(1) unreasonable delay claim. *Jahangiri*, 2024 WL 1656269, at *13 (quoting *Lee*, 2024 WL 639635, at *7). As a result, the above analysis disposing of the unreasonable delay claim necessarily disposes of the unlawful withholding claim, too. Second, a § 706(2) claim is appropriate when a plaintiff challenges final agency action, but Plaintiffs allege that Defendants' action on their visa applications is not final. *Id.* (quoting *Lee*, 2024 WL 639635, at *7); (ECF No. 1 ¶ 80). Therefore, § 706(2) is not the correct vehicle for Plaintiffs' claim.

Plaintiffs' unlawful withholding claims under § 706(1) and § 706(2) are thus dismissed.

## IV. Conclusion

For the foregoing reason, (1) Defendants' motion for extension of time to respond to the complaint, (ECF No. 8), will be granted; (2) Defendants' motion for extension of time to file

42

a reply to Plaintiffs' opposition, (ECF No. 11), will be granted;
(3) Defendants' motion to dismiss for lack of subject matter
jurisdiction, (ECF No. 9), will be granted; and (4) Defendants'
motion to dismiss for failure to state a claim, (*Id.*), will be
denied as moot.

                                                          /s/
                                                DEBORAH K. CHASANOW
                                                United States District Judge